[S. F. No. 1808.   Department Two. — September 24, 1901.]

WILLIAM LOWERY, Respondent, v. SAN JOAQUIN AND KINGS RIVER CANAL AND IRRIGATION COMPANY, Appellant.

Injury from Flood-water — Back-water from Dam — Level of Land — Verdict against Evidence. — A verdict for the plaintiff for damages for injury to his land and crops from flood-water, alleged to have been occasioned by back-water from defendant's dam, is against the evidence, where it affirmatively appears that the back-water from the dam was below the natural level of the plaintiff's land, and there is no evidence to the contrary.

Id. — Inference against Laws of Physics. — No reasonable inference can be drawn contrary to the laws of physics and the course of nature, that the back-water below the level of the plaintiff's land either caused or contributed to the injury to the plaintiff's land.

Id. — Meeting of Flood-waters with Back-waters — Speculative Assumption. — Where it appears that flood-waters from another source stood at plaintiff's levees two feet higher than the highest point of overflow thereof at the dam, the verdict cannot be supported upon the mere speculative assumption that the injury might have been occasioned by the meeting of the waters tending to raise the level of the back-water at the place of meeting.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial.   E. W. Risley, Judge.

The facts are stated in the opinion of the court.

Frank H. Short, E. B. & George H. Mastick, and W. B. Treadwell, for Appellant.

M. K. Harris, and N. C. Coldwell, for Respondent.

HENSHAW, J.—Plaintiff sued to recover damages to his land and to the crops growing thereon, alleged to have been occasioned by defendant's dam. The answer denied that the flooding was caused by the dam, and affirmatively pleaded a prescriptive right in defendant to the maintenance of the structure. The cause was tried before a jury, verdict was rendered for plaintiff, and from the judgment which followed and from the order denying it a new trial the defendant appeals.

In 1871 the defendant erected a dam across the San Joaquin River, commenced the construction of its canal for irrigating purposes, and ever since that time has maintained the dam, and by means of it has diverted water into the canal from the San Joaquin River, and has furnished that water to the inhabitants of certain counties for purposes of irrigation. For more than five years prior to the flooding of plaintiff's land, the dam was continuously maintained at its present height. Plaintiff was the lessee of the flooded land. In his lease it was provided that he should surround it with levees sufficiently high and strong to protect the land from the overflow of water, and to maintain and guard it against breaks, and that the lessor should not be liable on account of the breakage of levees. In its natural condition the land was low, and part of it was designated as swamp and overflowed land. Before the erection of the dam, it had been constantly subject to overflow in the wet seasons. Plaintiff went into possession under his lease, built a levee about the land, and proceeded to cultivate it. It was under cultivation when the flood-waters of the San Joaquin broke the levee and destroyed the crop. Upon the left bank of the San Joaquin River, just above the dam in question, is Fresno Slough. About ten miles above the mouth of Fresno Slough, and at the nearest point perhaps half a mile distant therefrom, is plaintiff's land. Nineteen miles above the dam, and upon the same side of the river, is Four Tree Slough. Four Tree Slough, at seasons of flood, carries a large body of water from the San Joaquin River, and discharges it into the low land or basin, composed, in part, of plaintiff's land. It is some six or seven miles from the mouth of Four Tree Slough to plaintiff's land.

There was no direct evidence that defendant's dam caused the overflow. It rests upon inference from the known laws of physics, and from the actual physical conditions shown to exist

at the time the levee gave way.   It being a law of physics that water seeks a common level, it may be mathematically demonstrated in any given case to what height a dam, or other obstruction, made across a stream will raise the impounded waters.   It is known with much exactness, for example, how far the influence of the stupendous dams in process of construction across the river Nile will be felt, and the area of the lands which will be affected by them.   In this case, at the time plaintiff's levee broke, the water was flowing freely over the dam to a depth of over $3\frac{1}{2}$ feet.   It was physically impossible, therefore, for the dam to have impounded and backed up the water of the river to any greater height than this.   Yet that height was $3\frac{3}{4}$ inches below the level of the natural ground of plaintiff's land, where the break occurred, while the break in fact occurred when the water was standing some 18 inches high against the levee.   Considering first the backing of the waters up Fresno Slough, occasioned by the dam, it is clear from the evidence of plaintiff's expert that the effect was felt only eight or ten miles above the mouth of Fresno Slough, and taking that fact in connection with the other fact, proved without dispute, that the level of the highest water of the dam was $3\frac{3}{4}$ inches below the natural ground-level of plaintiff's land, it amounts to a demonstration that the water backed by the dam up Fresno Slough could not have occasioned the damage.   Upon the other hand, the bottom of Four Tree Slough is nearly twenty-four feet higher than high-water mark at the dam.   It is manifest, therefore, that the dam could not have contributed to the outpour of water, admittedly of immense volume, which swept through Four Tree Slough onto plaintiff's land.   Upon all these matters there is not even a conflict in the evidence.   Mr. Norboe, plaintiff's expert, admitting the insufficiency of his *data*, testified merely that the dam backed the water up Fresno Slough "somewhere from eight to ten miles," and he nowhere testifies that the dam did affect, or could have affected, the waters of Four Tree Slough.   Upon the other hand, the defendant's expert engineers — Messrs. Allardt and Teilman — testified from elaborate *data* before them, that the dam could not by any physical possibility affect the height of the water in the river so far up stream as the exit of Four Tree Slough, and showed further, that accepting Mr. Norboe's declaration that the dam backed water up Fresno Slough eight or ten miles,

still the highest possible point to which the dam could have affected the surrounding country was 3¾ inches lower than the level of plaintiff's land.

It is further shown without conflict that Four Tree Slough, in seasons of flood such as this, carries an immense volume of water, and discharges it upon the low plain where plaintiff's land is situated, and it is shown that plaintiff's land was constantly subject to overflow at high water. The very lease provides for the building and maintenance of levees, and exonerates the owner of the land from damages which may be occasioned by floods. It seems clear that the cause of the break in plaintiff's levee was the immense volume of water hurled against it, and standing eighteen inches high upon the levee,—water which was carried by Four Tree Slough; and, as has been said, since the bottom of Four Tree Slough was twenty-four feet higher than the top of the dam, it is a physical impossibility that the dam could have affected the discharge by the river of its waters into this slough. It is said, however, that the meeting of the water coming down Four Tree Slough with the water backed up Fresno Slough would have a tendency to raise the level of the water at the place of meeting, and thus the injury might have been occasioned by this combination of circumstances. But there is absolutely no evidence that it was so occasioned. The raising of the height of the water under such circumstances, and while it was freely discharging itself over the dam, could, at the most, so far as the dam influenced it, have been but slight and temporary. Yet it is here shown that the water raised and stood against plaintiff's levees nearly two feet higher than the highest point of the overflow at the dam. All reasonable inferences may be indulged from proved facts, but no inference may be upheld which is contrary to reason, to physical laws, or the course of nature. It is not sufficient, therefore, in the face of direct and positive testimony, that this result could not have been so accomplished, to support the verdict upon the mere assumption that it might have been so accomplished. A defendant may be held responsible for damages upon proof, if it be the best that can be offered, that the injury probably resulted from his own wrong-doing or neglect, but a verdict cannot be sustained upon the mere speculative theory that the damages might have been so occasioned.

We are unable to discern, therefore, within the evidence in

this case, any reasonable ground for saying that the plaintiff's injuries were occasioned by reason of the dam, and the judgment and order must therefore be reversed and the cause reremanded.

McFarland, J., and Temple, J., concurred.